IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CHRISTOPHER NAPOLI, et al.,

    Defendants.

                                             /

No. C 10-00642 CRB

**ORDER DENYING MOTION FOR RECONSIDERATION**

     This is a multi-Defendant criminal action charging Defendants with, among other things, conspiracy to distribute and possession with intent to distribute controlled substances. See Superseding Indictment (dkt. 144); 21 U.S.C. §§ 846, 841(a)(1) & (b)(2). The charges center around the operation of internet pharmacy websites. Those internet pharmacies, in the government's view, were essentially drug distribution rings. They filled bogus prescriptions issued by doctors who did nothing more than, at most, review an on-line questionnaire from a putative "patient."

     The legality of Defendants' business model has been the subject of dispute for some time. In particular, Defendant Christopher Napoli sought and received help and advice from an attorney, Mr. Joseph Green, regarding whether internet pharmacies could lawfully distribute drugs based on prescriptions issued by doctors who only reviewed on-line questionnaires from "patients." Mr. Green has consistently taken the position that the business was lawful. Among other things, he was the author in February 2006 of a target

response letter to the United States Attorneys Office in Philadelphia and counsel on two Declaratory Judgment actions filed by Defendants Napoli and Dr. Joseph Carozza in late 2006 and early 2007. In addition, Defendant Napoli and/or Mr. Green apparently made statements to others (including other Defendants) regarding the legality of Defendant Napoli's business model. The purpose of those statements was apparently to induce people to participate in the business.

On the basis of the foregoing, the government moved to disqualify Mr. Green as Defendant Napoli's counsel. It made three related arguments in support of its motion. First, it argued that there might be an actual conflict between Defendant Napoli and Mr. Green if Defendant Napoli were to assert an advice of counsel defense. Second, it asserted that Mr. Green's status as a percipient witness to the matters alleged in the Superseding Indictment will make him an unsworn witness at trial. Finally, the government said that Mr. Green might himself become a Defendant and has an incentive to minimize his exposure at the expense of Defendant Napoli's.

Defendant Napoli opposed the government's motion. He argued that (1) nothing Mr. Green has done is illegal, (2) a lawyer consistently espousing a position (in this case, that the internet pharmacies described above are legitimate businesses) cannot be a basis for disqualification even if that position will become relevant in the case, and (3) Defendant Napoli has knowingly and intentionally waived any conflict that might exist.

This Court granted the government's motion to disqualify on February 16, 2011 but indicated that it would entertain a motion for reconsideration. That reconsideration motion was filed March 4, 2011. Defendant Napoli reasserts similar arguments against disqualification and also argues that measures short of disqualification – redaction of Mr. Green's name from documents, for example – can address any potential unsworn witness problems.

* * *

Disqualification is called for, and the Court declines to reconsider its earlier disqualification Order.[1] As will be discussed in more detail below, there is a significant risk that Mr. Green will (1) act as an unsworn witness at trial, (2) act as both witness and advocate in connection with an advice of counsel defense, and (3) be operating with an actual unwaivable conflict.

## I. BACKGROUND

Defendant Napoli is charged with conspiracy to distribute controlled substances, possession with intent to distribute and distribution of controlled substances, and conspiracy to commit money laundering. These charges are related to his participation in what the government describes in the Superseding Indictment as the "Safescripts Online Conspiracy." See Superseding Indictment (dkt. 144) at 2; 21 U.S.C. §§ 846, 841(a)(1) & (b)(2); 18 U.S.C. § 1956(h) & (a)(2)(A).

The Safescripts Online Conspiracy is summarized in the Superseding Indictment as follows. Defendant Napoli, together with Defendant Daniel Johnson and others, created and operated internet pharmacy websites. Superseding Indictment (dkt. 144) ¶ 1. Through these websites, Defendant Napoli and others offered to sell controlled substances to the public. Id. Customers provided their credit card information and submitted brief on-line questionnaires before ordering specific drugs. Id. Customers were not required to submit valid identification forms or valid prescriptions. Id. Several doctors, including Defendant Dr. Carozza, approved customer orders that were not for a legitimate medical purpose while the doctor was acting outside the scope of his or her professional practice. Id. ¶ 2.

The doctors, including Defendant Dr. Carozza, purported to review the on-line questionnaires and approve prescriptions. Id. ¶ 3. The on-line questionnaires asked customers to briefly describe their medical history. Id. At no time did any doctor physically examine a customer, obtain a complete medical history, or confirm the accuracy of the information provided on the on-line questionnaire. Id. After Defendant Dr. Carozza or

---

[1] The Court's initial ruling disqualifying Mr. Green was made following oral argument and was not accompanied by a written opinion. Here, the Court sets out its reasoning.

another approving doctor authorized a "prescription," owners and employees of various fulfillment pharmacies in locations around the United States located customers, filled prescriptions, and shipped the controlled substances. Id. ¶ 4. From approximately September 30, 2005 through December 2006, over $22 million was transferred from credit card processing accounts to bank accounts controlled by Defendant Napoli. Id. ¶ 12.

The government has evidence of Mr. Green's involvement in the foregoing activity via his representation of Defendant Napoli and certain internet pharmacies that form the basis of the Safescripts Online Conspiracy. For example, the government discovered on a co-Defendant's computer an October 11, 2005 letter from Mr. Green to Defendant Napoli in which Mr. Green attests to the validity of the internet pharmacy business model. See Ault Decl. (dkt. 170) Ex. A. That letter was allegedly submitted to a company called RxPayments, a credit card processor, to induce it to provide credit card processing services. Mot. to Disqualify (dkt. 169) at 3. Likewise, a July 28, 2006 email from Mr. Green to AIT Financial Advisors made representations regarding the legality of Defendant Napoli's business model. Id. Ex. B. "Mr. Napoli and PSA, LLC, operate as internet intermediaries. We have explained this business model to the United States Attorney . . . . We believe that the business he operates is lawful. . . . . If you believe that the activities described in our letter . . . create the risk of money laundering allegations, please tell us why and provide us with any documentation to support your position. If you choose not to do so, and choose to unwind the investments, we will look to you to satisfy any losses suffered."). Similarly, the government has identified witnesses who might testify about meetings and/or conversations at which Mr. Green was present and may have made statements attesting to the legality of the internet pharmacy business model to induce participation or mollify concerns. "[Doctor Wilkins] also recalled having a meeting with N[apoli] and his attorney Joe Green . . . some time in April or May of 2005. [Doctor Wilkins] stated that prior to this meeting [] he had already begun approving the questionnaires but went to the meeting to make sure that everything was legal with the internet business. During the meeting, [Doctor Wilkins] was

assured by Mr. Green that every thing was fine and that no laws were being broken." Id. Ex. C (Report of Investigation ("ROI") re Proffer of Dr. John Wilkins).

Mr. Green was also actively involved in pressing his and Defendant Napoli's position to the government. As discussed, Mr. Green authored a target response letter on Defendant Napoli's behalf to the United States Attorneys Office in Philadelphia on February 24, 2006. Among other things, that letter provides as follows:

> Please inform the grand jury that we contend that Mr. Napoli never knowingly or intentionally violated the law, or knowingly engaged in any act that assisted unlawful activity. Mr. Napoli never knowingly encouraged or assisted any unlawful delivery, or any delivery to minors. <u>He has always acted on sound advice that he continues to believe.</u>

Id. Ex. B (emphasis added). In addition to that letter, Mr. Green was one of several lawyers (judging by the order of signatures, the lead lawyer) on Declaratory Judgment actions filed in November 2006 and January 2007 seeking a determination as to the legality of the internet pharmacy business model. The government has represented that it may call a witness to testify as to a pre-Declaratory Judgment meeting attended by Mr. Green at which the decision to file those actions was made. Id. Ex. D.

## II. LEGAL STANDARD[2]

The Sixth Amendment provides a criminal defendant with the right to choose his counsel. U.S. Const. Am. VI. However, that right is qualified. Wheat v. United States, 486 U.S. 153, 159 (1988). When the possibility of a potential conflict is raised to the court, there is an independent duty to protect a defendant's rights. A court may disqualify an attorney "not only in those rare cases when an actual conflict of interest may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Wheat, 486 U.S. at 163.

---

[2] This is technically before the Court on a motion for reconsideration, but, as mentioned, this is the Court's first full explication of its reasoning. Accordingly, the Court focuses on the legal standard for disqualification rather than the standard for reconsideration. See United States v. Mendez, No. CR-07-00011 MMM, 2008 WL 2561962 at *1-*2 (C.D. Cal. 2008) (noting that (1) "[a]lthough the Federal Rules of Criminal Procedure do not expressly authorize the filing of motions for reconsideration, 'numerous circuit courts have held that motions for reconsideration may be filed in criminal cases[]'" and (2) a court faced with a reconsideration motion in a criminal case should apply the reconsideration standards set forth in the civil rules) (citations omitted).

5

Moreover, a court may disqualify an attorney notwithstanding a defendant's knowing and intelligent waiver because courts "have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Id. at 160.

The parties dispute whether this Court must find a "compelling purpose" for disqualifying Mr. Green. This is largely a fight over semantics rather than substance. The Ninth Circuit's "compelling purpose" standard appears to be a gloss on the Supreme Court's Wheat standard. The Wheat standard already recognizes the fundamental right to counsel of one's choice and restricts the circumstances under which a court may override that choice.[3] Further, Wheat has recently been endorsed by the Supreme Court as setting forth the circumstances under which a defendant's right to counsel may be restricted. United States v. Gonzales-Lopez, 548 U.S. 140, 148 (2006) (holding that the erroneous denial of the right to counsel of choice is not subject to a harmless error analysis but noting that "[n]othing we have said today casts any doubt or places any qualification upon our previous holdings that

---

[3] Napoli's argument that this Court must find a "compelling purpose" for restricting his right to counsel of his choice is based primarily on United States v. D'Amore, 56 F.3d 1202, 1204 & n.2 (9th Cir. 1995) (quoting United States v. Lillie, 989 F.2d 1054, 1055-56 (9th Cir. 1993)) ("[T]he Sixth Amendment . . . may be abridged to serve some 'compelling purpose' . . . ."). The government argues that the Ninth Circuit overruled D'Amore and Lillie in United States v. Garrett, 179 F.3d 1143, 1145 (9th Cir. 1999), and so no compelling purpose is required.

D'Amore, Lillie, and Garrett all concern a defendant's right to change counsel and the associated delays inherent in the exercise of that right. Lillie, 989 F.2d at 1055 ("We consider whether a criminal defendant is entitled to change retained counsel at the last minute before trial.") (emphasis added); D'Amore, 56 F.3d at 1203 ("[Defendant] appeals the district court's denial of his request to substitute private counsel of his choosing for his court-appointed lawyer at his probation revocation hearing.") (emphasis added); Garrett (reviewing denial of continuance to effectuate addition of new counsel). In Garrett, the Ninth Circuit made clear that "[w]hen a motion for a continuance arguably implicates a defendant's Sixth Amendment right to counsel, the court must consider the effect of its decision on this fundamental right" and it overruled D'Amore and Lillie to the extent they held that a "compelling purpose" was required to deny a continuance when doing so prevented a defendant from having his counsel of choice. Id. at 1147 (emphasis added).

Garrett was not reviewing a decision to deny a defendant counsel of his choice. Id. at 1146. "On appeal, Garrett argues that, in denying his motion for a continuance, the district court actually denied his motion to substitute counsel, thereby violating his Sixth Amendment right to counsel. This argument is not supported by the record. . . . . [I]t was Garrett's request for a 30-day continuance, not his motion to substitute counsel, that the district court denied." Id. (emphasis added). Here, Napoli is not moving to change or substitute counsel nor is he seeking a continuance. Accordingly, this Court's wide discretion to control its docket, at issue in D'Amore, Lillie, and Garrett is not relevant here.

6

United States District Court
For the Northern District of California

1 limit the right to counsel of choice . . . .") (citing Wheat, 486 U.S. at 159-160; Morris v.

2 Slappy, 461 U.S. 1, 11-12 (1983)).

**III.    DISCUSSION**

Mr. Green's representation of Defendant Napoli presents three interrelated problems. Broadly speaking, Mr. Green's knowledge of and participation in the events at issue in the Superseding Indictment presents an unsworn witness problem. In addition, because Defendant Napoli has represented that it is likely that he will be introducing evidence tending to support an implicit or imperfect advice of counsel defense, there is a witness/advocate concern as well. Finally, because Mr. Green was involved in the activities alleged in the Superseding Indictment, he is a potential target of the government's investigation and this creates an unwaivable conflict with Defendant Napoli.

**A.    Mr. Green Is Likely to Act as An Unsworn Witness**

In United States v. Simcho, No. CR 06-00542 MHP, 2007 WL 1100316 (N.D. Cal. Apr. 11, 2007), as here, the government sought disqualification of a lawyer because, among other things, he was a witness to relevant events. Among the court's concerns was that (1) "each of the witnesses is likely to bring up [the lawyer's] name" because most of them attended a tax seminar organized by the defendant at which the lawyer spoke; and (2) the witnesses would refer to what the lawyer said at the seminar and "[e]ven if [the lawyer] is not called as a witness, he will be cross-examining other witnesses as to his own statements . . . [which] all too likely [will] lead to [the lawyer] attesting to the facts contained in his own questions." Id. at 2.

The facts here raise concerns similar to those identified in Simcho. As described above, Mr. Green sent communications on Defendant Napoli's behalf to potential business associates, and Defendant Napoli may have also forwarded communications from Mr. Green to others to influence them to participate in his business. See Ault Decl. (dkt. 170) Ex. B (Email from Mr. Green to Ken Dorfman) ("We believe that this activity [the internet pharmacy] is lawful."); id. Ex. C (March 13, 2007 ROI ¶ 6 ("WILKINS also recalled having a meeting with NAPOLI and his attorney Joe Green at a restaurant some time in April or

7

May of 2005. WILKINS stated that prior to this meeting[] he had already begun approving the questionnaires but went to the meeting to make sure that everything was legal with the internet business. During the meeting, WILKINS was assured by Mr. Green that every thing was fine and that no laws were being broken."); id. Ex. D. (April 27, 2007 ROI) ¶ 7 (regarding a meeting set up "to get a panel together to obtain a declaratory judgment that the internet business was legal from all involved in the business. . . . . CORCORAN specifically mentioned the attendance of Attorney Joseph GREEN . . . ."); id. Ex. E (April 9, 2007 ROI) ¶ 34 (describing a Florida lawyer agreeing to help Napoli buy a pharmacy in Florida because the Florida lawyer reviewed Mr. Green's letter describing the business as legal). In addition, Mr. Green was a lawyer on two Declaratory Judgment actions and authored the target response letter to the United States Attorneys Office in Philadelphia. This evidence will almost certainly be introduced by at least one Defendant and/or the government because it goes to Defendants' state of mind.[4] Mr. Green is therefore at least likely to be put in the position of examining witnesses as to his own statements and/or events to which he was directly involved. See United States v. Locascio, 6 F.3d 924, 933 (2d Cir. 1993).[5]

Defendant Napoli says he is willing to redact Mr. Green's name from the target response letter and the Declaratory Judgment actions and that that should cure any unsworn witness problem. See United States v. Diozzi, 807 F.2d 10, 14 (1st Cir. 1986) (redaction of counsel's name from documents in evidence cured any "unsworn witness" problem and "[d]efense counsel cannot be subject to disqualification merely for arguing their clients' positions on statements that are in evidence."). But redaction of Mr. Green's name from documentary evidence is an insufficient cure for the unsworn witness problem presented here.

---

[4] The Court permitted Mr. Green to argue Defendant Napoli's Motion to Transfer, which was heard on the same day as Defendant Napoli's Motion for Reconsideration of the Disqualification Order. During argument, Mr. Green acknowledged that this case is largely about what Defendant Napoli knew and when he knew it.

[5] Defendant Napoli points out, accurately, that Mr. Green's role in the events likely to be at issue in this trial is much different (and less significant) than the role played by the lawyer disqualified in Locascio. Nevertheless, several of the concerns raised in Locascio, including the likelihood that Mr. Green will act as an unsworn witness, are present here as well.

8

Defendant Napoli is not the only Defendant in this case.[6] Other Defendants and/or witness will have occasion to bring up Mr. Green's name either to describe the facts and/or to show a lack of consciousness of guilt (i.e. that <u>they</u> relied on Mr. Green's advice). <u>Simcho</u>, 2007 WL 1100316 at *2 ("[E]ach of the witnesses is likely to bring up [the lawyer's] name"). Asking those witnesses (including any Defendants) not to use Mr. Green's name or otherwise identify him as Defendant Napoli's counsel will confuse the jury and be prejudicial. Further, if Mr. Green is Defendant Napoli's counsel and it is necessary to cross examine a co-Defendant asserting reliance on Mr. Green's advice, Mr. Green will be examining witnesses as to events about which he has first hand knowledge. Redaction of Mr. Green's name from documentary evidence is no remedy for that unsworn witness problem.

Moreover, the two Declaratory Judgment actions likely to be put into evidence have an inconsistency about which testimony is likely to be important. Specifically, the inconsistency concerns whether, when the first action was filed, Defendant Napoli was <u>already</u> conducting his business or whether he was only contemplating doing so. <u>Compare</u> Ault Decl. (dkt. 227) Ex. 1 ¶ 15 (November 2006 Declaratory Judgment Action: "Plaintiffs <u>propose</u> to conduct legitimate electronic commerce in prescription pharmaceuticals . . . .") (emphasis added) <u>with id.</u> Ex. 2 ¶ 15 (January 2007 Declaratory Judgment Action: "<u>For more than one year</u>, Plaintiffs <u>conducted</u> legitimate electronic commerce in prescription pharmaceuticals . . . .") (emphasis added). Any questioning or argument by Mr. Green regarding Defendant Napoli's decision to file the Declaratory Judgment actions, and the content of the pleadings, will result in Mr. Green "implicitly interpreting" conversations and decisions he was involved in making. <u>See</u> <u>United States v. McKeon</u>, 738 F.2d 26, 33-34 (2d Cir. 1984) ("For a lawyer to retain a right to argue a witness's credibility regarding material conversations to which the lawyer was a party in order to explain other statements by the

---

[6] As mentioned, Defendant Napoli has moved to transfer his case to the Eastern District of Pennsylvania where, because no other Defendant has moved for a similar transfer, he would be tried alone. In a separate Order, this Court denies Defendant Napoli's motion to transfer.

9

lawyer which are in evidence is . . . untenable. Kennedy's insistence on retention of such a right thus made his limited disqualification as trial counsel entirely appropriate.").[7]

Accordingly, disqualification of Mr. Green as trial counsel is appropriate because of the high risk that Mr. Green will act as an unsworn witness.

### B. Defendant Napoli is Likely to Assert an Implicit or Imperfect Advice of Counsel Defense, and his Co-Defendants are Likely to Place Mr. Green's Advice at Issue

At oral argument on the motion for reconsideration, Defendant Napoli's local counsel was noncommittal when asked whether Defendant Napoli would be asserting an advice of counsel defense. However, Defendant Napoli's motion papers suggest that, at the very least, he is likely to assert an implicit or imperfect advice of counsel defense. "He will likely introduce evidence that he asserted his belief in the legitimacy of his conduct through the target response letter drafted by his attorney and through the filing of his complaints for

---

[7] Napoli also cites two district court cases that followed Diozzi's rationale and denied motions to disqualify counsel. Both are distinguishable.

In United States v. Becker, No. 10-40077-02, 2011 WL 93759, (D. Kan. Jan. 11, 2011) the court declined to disqualify a lawyer whose communications to her client about possible imminent charges might have caused the client to try to flee the country. Becker is distinguishable in two key ways. First, unlike here, in Becker there was no evidence that the lawyer took any actions on her client's behalf that would be at issue in the trial. Id. at *3 ("There is no evidence before the Court to suggest that [the lawyer] was a witness or participant in an ongoing crime."). Second, the Becker court "fores[aw] no arguments that [the lawyer] would be constrained from making . . . [n]or would [she] 'subtly impart to the jury [her] first-hand knowledge of events,' any more than any other person who was present during [an open court proceeding]."). Here, to the contrary, the Court can foresee several arguments that Mr. Green would be foreclosed from making, and he may well be in a position to "subtly impart to the jury his first-hand knowledge of events . . . ." Id. Indeed, the court in Becker distinguished its case from United States v. Evanson, which upheld a disqualification when presented with facts much closer to those here. 584 F.3d 904, 909 (10th Cir. 2009) ("[T]he district court acted well within the broad latitude it is afforded in determining that Mr. Wheeler should be prohibited from representing Mr. Evanson because of 'a serious potential for' conflict-of-interest and unsworn-witness problems. Those problems stemmed primarily from Mr. Wheeler's apparent involvement in the creation of two letters that Mr. Evanson sent to participants in his tax scheme.") (citation omitted).

Defendant Napoli also cites United States v. Fumo, 504 F. Supp. 2d 6 (E.D. Pa. 2007), in which a court denied the government's request for disqualification of counsel. Among other distinctions, none of the parties in Fumo intended to call one of the subject lawyers as a witness and none apparently intended to present an advice of counsel defense. Id. at 34-35. Such is not the case here. First, Napoli does intend to introduce the issue of his reliance on his lawyer. See *infra* sec. III.B Second, no other Defendant has foresworn a defense that would require Mr. Green as a witness or at least place their reliance on him squarely at issue. Id.

10

Declaratory Judgment." Mot. for Reconsideration (dkt. 217) at 15[8] (emphasis added). Moreover, even if Defendant Napoli does not explicitly or implicitly raise an advice of counsel defense, other Defendants and/or the government are likely to inject into the trial Mr. Green's involvement in and advice about the legality of the internet pharmacies. Simcho, 2007 WL 1100316 at *2 (noting that, even if the defendant did not testify, "the information he told other people will inject [the lawyer] and the defendant's reliance on [the lawyer] into the trial.").[9] See also Ault Decl. (dkt. 170) Ex. D. (April 27, 2007 ROI) ¶ 7 (describing a meeting with, among others, Defendants Napoli and Dr. Carozza and Mr. Green "to get a panel together to obtain a declaratory judgment that the internet business was legal from all involved in the business.").

Thus, there is very high probability that Mr. Green's advice will be placed at issue during trial by Defendant Napoli and/or by one or more other Defendants. This exacerbates the unsworn witness problem already discussed earlier (to the extent the defense is raised by Defendants other than Defendant Napoli) and creates a serious potential witness/advocate conflict warranting disqualification. See United States v. Swafford, 512 F.3d 833, 839-40 (6th Cir. 2008) (affirming district court's decision to disqualify counsel where "[t]he judge acknowledged that [the defendant] was prepared to waive [an advice of counsel defense] . . . [because] during the course of the trial, the government might offer evidence leading the defendant to testify, which, in turn, might implicate the conflict of interest . . . . This potential, the court concluded, required resolution of the issue before the trial because 'the stakes are so high' (e.g. mistrial, replacing counsel).").

---

[8] Page citations to e-docketed filings are to the e-page number.

[9] Defendant Napoli concedes that at least two other Defendants might have occasion to introduce their (and, by implication, his) reliance on Mr. Green's advice. See Reply to Opp'n to Mot. for Reconsideration (dkt. 230) at 8. He asserts that measures short of disqualification will protect any interest that these other Defendants might have in asserting an advice of counsel defense because "[i]t does not really matter what attorney wrote [the declaratory judgment action or opinion letter], only that an attorney did." Id. The Court rejects that position because the interrelationships among and between Defendants and Mr. Green informs the believability of any particular Defendant's reliance on Mr. Green's advice. Put differently, a defendant is entitled to flesh out an advice of counsel defense and should not be limited to saying "I relied on a lawyer" without identifying, among other things, who the lawyer was, how he knew the lawyer, and who else the lawyer interacted with and gave similar advice to.

11

United States District Court
For the Northern District of California

### C. Mr. Green Is A Potential Target of the Prosecution and Has Interests Adverse to Defendant Napoli

Disqualification is appropriate for another reason as well. In <u>Mannhalt v. Reed</u>, 847 F.2d 576, 581 (9th Cir. 1998) the Ninth Circuit noted that "when an attorney is accused of crimes similar or related to those of his client, an actual conflict exists because the potential for diminished effectiveness in representation is so great. For example, a vigorous defense might uncover evidence of the attorney's own crimes, and the attorney could not give unbiased advice to his client about whether to testify or whether to accept a guilty plea." Moreover, a lawyer facing possible reputational or criminal consequences because of his own involvement in conduct at issue in a criminal trial might make biased decisions about whether to call certain witnesses and what to ask them. <u>See</u> <u>id.</u>

At the very least, Mr. Green's reputation is on the line because he has asserted that the internet pharmacy business model described above is lawful. He has a vested interest in Defendant Napoli being vindicated, but that interest is in large part a selfish one. His previously stated positions and advice to Defendant Napoli and others calls into question his ability to fairly evaluate settlement offers in which Defendant Napoli would have to admit guilt and/or potentially implicate Mr. Green. <u>See</u> <u>United States v. Arrington</u>, 867 F.2d 112, 129 (2d Cir. 1989) (waiver of conflict insufficient because defendant "would have been represented by counsel encumbered with a strong incentive to conduct the trial in a manner that would minimize counsel's own exposure[,]" and this conflict would continue notwithstanding redactions or stipulations). Defendant Napoli has already been approached by the government about cooperating <u>against</u> Mr. Green. <u>See</u> Reply to Opp'n to Mot. to Reconsider (dkt. 230) at 9-10. As long as Mr. Green is a part of Defendant Napoli's trial team, it will be impossible for the defense to neutrally evaluate any similar settlement offers in the future. <u>See</u> <u>United States v. Fulton</u>, 5 F.3d 605, 610 (2d Cir. 1993) ("[I]f the allegations [of criminal activity on the part of the lawyer] are true . . . the attorney may fear that a spirited defense could uncover convincing evidence of the attorney's guilt or provoke the government into action against the attorney. Moreover, the attorney is not in a position to give unbiased advice to the client about such matters as whether or not to testify or to plead

12

guilty and cooperate since such testimony or cooperation from the defendant may unearth evidence against the attorney.") (citations omitted).

Therefore, because Mr. Green appears to be a potential target of the government's investigation and has a self-interest in minimizing his exposure, disqualification is warranted.

### D. This Matter Should Be Resolved Now, and Complete Disqualification is Required

In addition to his arguments against disqualification, Defendant Napoli asserts alternatively that (1) this issue need not be decided now; and/or (2) measures short of complete disqualification are appropriate even if this Court identifies problems and/or conflicts with the representation. Neither is a viable option.

First, the issue must be decided now because the Court should not be placed in the position of having to decide significant questions of representation on the eve of, or even during, trial.

> Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics. Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them.

Wheat, 486 U.S. at 162-63; see Swafford, 512 F.3d at 839-40. This is a fairly complicated multi-Defendant action. Notwithstanding the difficulty of predicting with precise accuracy what evidence will be important, it appears very likely that evidence will be introduced – by Defendant Napoli or others – that will make Mr. Green an unsworn witness and/or put his pre-Indictment advice before the jury. See Mot. for Reconsideration (dkt. 217) at 15. At

13

1 best this would result in eve of trial or in trial substitutions of counsel and associated risks of
2 continuances and later claims of ineffectiveness. See Garrett, 179 F.3d at 1145; United
3 States v. McClendon, 782 F.2d 785, 786 (9th Cir. 1986). The Court can and should avoid
4 these and potentially worse problems by dealing with the matter now.

Second, measures short of complete disqualification are not sufficient to cure the problems identified above. As discussed, redaction of Mr. Green's name from documentary evidence does not cure the likely unsworn witness and witness/advocate concerns. Nor can Mr. Green remain involved even in an advisory capacity. The government has already approached Defendant Napoli about the possibility of cooperating against Mr. Green. Even with local counsel present, Mr. Green's advice as to settlement and trial strategy would be too tainted by actual and potential conflicts. Defendant Napoli might be comfortable with his decision to reject earlier government entreaties about settlement, but as discovery progresses and the government's theory and evidence become more clear, that comfort level might change. Defendant Napoli is entitled to conflict-free representation. See Arrington, 867 F.2d at 129. Nor can this conflict be appropriately waived. See United States v. Fulton, 5 F.3d 605, 609-612 (2d Cir. 1993) ("Fulton argues that his waiver is invalid because the district court abused his discretion in not disqualifying trial counsel after the allegations were aired and the conflict became apparent. We agree, although we certainly appreciate that the able district judge in this case was caught by surprise – a situation the government should have prevented by the simple expedient of informing the district judge of the allegations in advance of trial.") (citing Mannhalt, 847 F.2d at 581).

Thus, it is in the interest of justice to decide this matter now, and measures short of disqualification are not sufficient. Allowing Mr. Green to participate in any capacity is improper.

## IV.  CONCLUSION

The Court declines to reconsider its Order disqualifying Mr. Green as Defendant Napoli's counsel. It is likely that Mr. Green's advice to Defendant Napoli and others will be an issue at trial. This creates unsworn witness, witness/advocate, and conflicts problems

14

warranting disqualification. Further, the existing and potential conflicts between Mr. Green and Defendant Napoli stemming from Mr. Green's possible criminal culpability require disqualification as well.

Should circumstances change such that the concerns identified in this Order are no longer present, Defendant Napoli is free to bring the issue of Mr. Green's qualifications to represent him back to the Court's attention for further consideration.

**IT IS SO ORDERED.**

Dated: April 5, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE